**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 9 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BENITO NAVARETA-MARES,

      Defendant-Appellant.

No. 99-4011
(D. Utah)
(D.Ct. No. 97-CR-410)

_____

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL**, and **LUCERO**, Circuit Judges.

      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

      Appellant Benito Navareta-Mares appeals his conviction and sentence

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

following his conditional guilty plea, and the district court's decision denying his motion to suppress. We exercise our jurisdiction under 28 U.S.C. § 1291 and affirm.

Following a custodial interview where Mr. Navareta-Mares made inculpatory statements and gave a sworn statement, the government indicted Mr. Navareta-Mares for illegal reentry of a deported alien, following conviction of an aggravated felony under 8 U.S.C. § 1326(b)(2). Shortly thereafter, Mr. Navareta-Mares moved to suppress his sworn statement and any other statements and evidence obtained as a result of the interview. He premised his motion primarily on his young age of twenty years, alleged lack of education, and limited ability to understand English and Spanish.

Following Mr. Navareta-Mares' suppression motion, a magistrate judge conducted an evidentiary hearing. Hearing testimony establishes that while incarcerated at the Salt Lake City jail, an Immigration and Naturalization Service Agent conducted a custodial interview with Mr. Navareta-Mares in Spanish.[1]

---

[1] Mr. Navareta-Mares' incarceration in the Salt Lake City jail resulted from charges unrelated to those at issue here. Hearing testimony shows that prior to the interview, Agent Slaybaugh conducted an internal record check and discovered authorities previously deported Mr. Navareta-Mares' to Mexico following his conviction for an aggravated felony and illegal reentry into this country.

During the interview, Agent Gary Slaybaugh wore civilian clothes and did not carry a weapon (*id.* at 12). No guards were in the room, and Mr. Navareta-Mares was unrestrained and never handcuffed. Prior to asking Mr. Navareta-Mares any questions, Agent Slaybaugh advised him of his *Miranda*[2] rights in Spanish reading from Immigration and Naturalization form I-214. According to Agent Slaybaugh, Mr. Navareta-Mares appeared to understand his rights prior to his signing the waiver section of the form.

Following this waiver, Agent Slaybaugh asked Mr. Navareta-Mares questions from Immigration and Naturalization form I-213 concerning his name, birth place, country of citizenship, when he entered the United States, the status of his entry, and status when found. In answering these questions, Mr. Navareta-Mares implicated his unlawful reentry into the United States. Agent Slaybaugh then took a sworn statement from Mr. Navareta-Mares using an Immigration and Naturalization form entitled "Record of Sworn Statement," which Mr. Navareta-Mares signed. This form contains language that the statement given can be used against the defendant "in any administrative proceeding," but contains no language addressing its use in a court of law. During the interview, Agent

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Slaybaugh saw no evidence Mr. Navareta-Mares was physically debilitated or confused. Although both Agent Slaybaugh and Mr. Navareta-Mares wore cloth masks due to Mr. Navareta-Mares' quarantine for possible tuberculosis, both later testified they understood each other. At the evidentiary hearing, the Spanish interpreter stated on the record that Mr. Navareta-Mares did not appear to have any problem understanding, speaking or reading Spanish.

Based on the pleadings and evidence obtained at the evidentiary hearing, the federal magistrate judge issued a recommendation to deny the motion. Based on this evidence and credibility determinations, the magistrate judge found: (1) Mr. Navareta-Mares understood the rights being abandoned and the consequences of abandoning those rights; (2) no intimidation, coercion or deception occurred during the custodial interview; and Mr. Navareta-Mares knowingly, intelligently and voluntarily waived his Miranda rights. The magistrate judge also concluded that the government's concession it would not seek introduction of the "Record of Sworn Statement" as evidence in the direct case disposed of any question regarding its suppression. The district court adopted the magistrate judge's recommendation and denied Mr. Navareta-Mares' suppression motion as to the other statements and evidence. Thereafter, Mr. Navareta-Mares entered a conditional plea of guilty, preserving his right to appeal dismissal of his

suppression motion. The district court sentenced Mr. Navareta-Mares to forty-one months in prison.

On appeal, Mr. Navareta-Mares claims the district court erred in denying his suppression motion. He argues he only partially understood Agent Slaybaugh when he advised him of his *Miranda* rights because: (1) at the time of the interview, he was only twenty years old; (2) he had only a ninth grade education; and (3) "his native language is not English and he only has a limited understanding of Spanish." In support, he asserts "he was deceived by an [Immigration and Naturalization Service] Spanish speaker who advised him of complex concepts in a language [Spanish] he was not proficient in" and gave him his Miranda rights "in a foreign language like Spanish." Finally, Mr. Navareta-Mares claims the district court must suppress all his statements to Agent Slaybaugh because those statements merged with his "Record of Sworn Statement" and, therefore, could only be used in an administrative proceeding, and not a criminal proceeding.

In reviewing the denial of a motion to suppress, we accept the district court's findings of fact unless they are clearly erroneous, viewing the evidence in the light most favorable to the district court's findings. *United States v. Erekson*,

70 F.3d 1153, 1156 (10th Cir. 1995).  Because Mr. Navareta-Mares claims his statements were involuntary, we review the issue of voluntariness *de novo*, although the trial court's rulings regarding subsidiary factual questions are subject to review under the clearly erroneous standard.  *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir. 1991), *cert. denied*, 503 U.S. 989 (1992).  We note waiver of a constitutional right "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege," which depends on the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).  This includes examination of Mr. Naraveta-Mares' characteristics such as his age, intelligence, and education, and the details of the interrogation, such as whether he was informed of his rights, the length of his detention and interrogation, and the use of threat of physical force. *See United States v. Nguyen*, 155 F.3d 1219, 1222 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1096 (1999).

In this case, Mr. Navareta-Mares' primary contentions are premised on his inability to understand Spanish.  A review of the record establishes Mr. Navareta-Mares is a Hispanic male, born, raised and educated through the ninth grade in Mexico.  He is a Mexican citizen whose parents, common-law wife and children

reside in Mexico. He admits he "was raised speaking, understanding Spanish, not English." He also admitted he understood Agent Slaybaugh who conducted their interview in Spanish, and who in turn testified Mr. Navareta-Mares appeared to fully understand his questions. Finally, at the evidentiary hearing, the Spanish interpreter stated on the record Mr. Navareta-Mares did not have any problem understanding, speaking or reading Spanish.

Under these facts, we find Mr. Navareta-Mares' unsupported allegations that his waiver and statements were involuntary, unintelligent and unknowing because of his inability to understand Spanish incredulous, if not outrageous, and unsupported by the record. Such conclusory allegations and incredible contentions, unsupported by specifics, are subject to summary dismissal. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). We further note Mr. Navareta-Mares never advises what, if any, language he is proficient in other than Spanish, thereby reinforcing the determination that Spanish is his first and only language. To the extent Mr. Navareta-Mares is somehow claiming he is not proficient in Spanish because of an abnormally limited vocabulary, he has not demonstrated facts sufficient to support this claim. *See, e.g., Schildan v. Gladden*, 426 F.2d 1158, 1159 (9th Cir. 1970) (finding twenty-seven-year old with brain damage had extremely limited vocabulary and understanding of every-day language).

As to his age and education, an examination of the record provides no evidence showing he failed to understand Agent Slaybaugh, the rights he was abandoning, or the consequences of that abandonment. To the contrary, the great weight of the hearing evidence supports the district court's determination that he fully understood the nature and ramifications of his waiver and statements. Thus, his conclusory remarks as to being only twenty years old and having only a ninth grade education, alone, without further support, are insufficient to establish his waiver and statements were involuntary, unintelligent or unknowing. *See Blackledge*, 431 U.S. at 74.

Finally, nothing in the record supports Mr. Navareta-Mares' claims that his statements, made prior to his "Record of Sworn Statement," were somehow merged and, therefore, could not be used during his criminal prosecution. The record shows Agent Slaybaugh never advised Mr. Navareta-Mares any of his statements, made prior to his "Record of Sworn Statement," would not be used to prosecute him. To the contrary, Mr. Navareta-Mares testified Agent Slaybaugh advised him his statements could be used against him in a court of law. As such, the district court properly allowed admission of all Mr. Navareta-Mares' statements made before he signed the "Record of Sworn Statement." The fact this

document contained language that it could be used for administrative purposes did not limit use of his other statements at his criminal prosecution.[3]

Under these circumstances, Mr. Navareta-Mares' claims must fail. For the reasons stated, we **AFFIRM** the district court's order denying Mr. Navareta-Mares' motion to suppress, and Mr. Navareta-Mares' judgment and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[3] Because the issue of whether the prosecution may use the Record of Sworn Statement is not directly before us, we decline to comment on its admissibility.